**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KEVIN VALENTINE**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 10 C 1234 |
| v. | ) | |
| | ) | Magistrate Judge |
| **MICHAEL J. ASTRUE**, | ) | Martin Ashman |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kevin Valentine ("Plaintiff") brings this motion for attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Defendant Michael Astrue, the Commissioner of the Social Security Administration ("Commissioner"), opposes the motion. The parties have consented to have this Court conduct any and all proceedings in this case, including entry of final judgment pursuant to 28 U.S.C. § 636(c) and N.D. Ill. R. 73.1(c). For the reasons stated below, the Court grants Plaintiff's motion.

## I. Background

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on April 12, 2004, alleging that he had become disabled as of June 14, 2002. After the Social Security Administration ("SSA") denied his claim, a hearing was held on July 6, 2006, following which an Administrative Law Judge ("ALJ") denied his application for benefits. The decision was unfavorable, but the Appeals Council ordered the ALJ to conduct a supplemental hearing on

April 21, 2009. A second unfavorable decision was issued on June 11, 2009. After the Appeals Council denied a request for review, Plaintiff appealed the Commissioner's decision to this Court. On June 24, 2011, the Court reversed the Commissioner's decision in part and remanded for further consideration. *See Valentine v. Astrue*, No. 10 C 1234, 2011 WL 2518904 (N.D. Ill. June 24, 2011). Plaintiff now seeks attorney's fees under the EAJA.

## II. Legal Standard

The EAJA provides that a district court may award "fees and other expenses" where (1) the claimant was a prevailing party, (2) the government's position was not substantially justified, (3) there are no special circumstances that make an award unjust, and (4) the claimant filed a timely and complete application with the district court. 28 U.S.C. § 2412(d)(1)(A); *Stewart v. Astrue*, 561 F.3d 679, 683 (7th Cir. 2009). The requesting party must show that the fees sought are reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). A position is "substantially justified if it has a reasonable basis in fact and law, and if there is a reasonable connection between the facts alleged and legal theory" propounded. *Stewart*, 561 F.3d at 683 (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). The Commissioner bears the burden of proving that both his pre-litigation conduct, including the ALJ's decision, and his litigation position were substantially justified. *Stewart*, 561 F.3d at 683. Proving this requires that the government show "its position was grounded in '(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory propounded.'" *Bricks, Inc. v. U.S. Env't Prot.*

*Agency*, 426 F.3d 918, 922 (7th Cir. 2005) (quoting *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1080 (7th Cir. 2000)); *Cunningham v. Barnhart*, 440 F.3d 862, 864 (7th Cir. 2006).

Under *Astrue v. Ratliff*, — U.S. — , 130 S.Ct. 2521 (2010), an award under the EAJA belongs to the plaintiff and can be offset to satisfy a pre-existing debt the plaintiff owes the United States ("the Government"). After the award is entered, if the Government determines that plaintiff owes no such debts, the Government will direct that the fee award and expenses be made payable to plaintiff's attorney pursuant to the EAJA assignment signed by the parties. The award for costs is also payable to plaintiff.

## III. Discussion

The Court remanded the Commissioner's decision on the grounds that the ALJ incorrectly determined Plaintiff's credibility, failed to properly evaluate the opinion given by his treating physician, and failed to properly assess his residual functional capacity ("RFC"). The Commissioner argues that the ALJ's credibility position was substantially justified because he properly considered Plaintiff's complaints under the standard provided in SSR 96-7p. In its order, however, the Court noted that the ALJ had failed to consider Mr. Valentine's activities of daily living in any meaningful detail at the two administrative hearings that took place in this case. Contrary to the Commissioner's argument, the Court did not base its decision on the fact that the ALJ failed to consider all seven factors set forth in SSR 96-7p. Instead, the Court was far more concerned with the attention the ALJ had given to the record in this case and the inferences he drew from it in order to evaluate Plaintiff's credibility.

As Mr. Valentine notes, the Court used unusually strong language in rejecting the ALJ's credibility decision. In particular, the ALJ implied that Mr. Valentine had manufactured problems related to his boils by lying down before scheduled disability hearings in order to aggravate his condition. The Court stated:

> By suggesting that Plaintiff intentionally brought his boils on himself by lying down when he knew a disability hearing was on the horizon, the ALJ implied that Plaintiff was not only malingering, he was also actively interfering with the integrity of the administrative processes that apply to his alleged disability. The Court finds it difficult to understand how this does not go to the heart of his credibility.

*Valentine*, 2011 WL 2518904, at *8. As the Court noted, the ALJ's decision in this regard rested on speculation and inferences instead of any objective evidence. The result was a seriously prejudicial finding that constituted an improper medical conclusion unsupported by the record. It is well-established that ALJs "must not succumb to the temptation to play doctor and make their own independent medical findings." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

Here, the ALJ compounded this error by further concluding that Mr. Valentine's physician, Dr. Dang, had performed a discogram on him. The ALJ concluded that this was a "very significant" element in the credibility finding because such a test could show that no nerve root compression existed, thereby undermining Plaintiff's credibility. As the Court noted, however, the ALJ had no basis in the record to reach such a conclusion and, once again, played doctor by making an independent medical finding. The Commissioner contends that other problems with the ALJ's findings, particularly his consideration of the medical record, were not so erroneous that they do not meet the "substantially justified" standard. Even if this were true, however, the independent medical findings the ALJ relied on in this case to assess Mr. Valentine's credibility were serious and fundamental errors that played an important part in the

credibility issue. Accordingly, neither the ALJ's decision nor the Commissioner's litigation position was substantially justified.

The Commissioner further argues that the ALJ's consideration of Dr. Dang's medical opinion was substantially justified because his consideration of the treating physician's report included a number of important aspects such as Mr. Valentine's symptoms, Dr. Dang's diagnoses, and factors that precipitated pain. The Court agreed with certain parts of the Commissioner's litigation position on the treating physician issue, particularly the fact that the ALJ took note of medical evidence that worked against Dr. Dang's conclusions. The Court was troubled, however, by the fact that the ALJ relied heavily on his conclusion that Dr. Dang was a neurologist and did not have the medical specialization to assess Mr. Valentine's back pain. As the Court noted, the record provided no evidence to support any conclusion as to Dr. Dang's specialty; the medical expert thought that Dr. Dang was an anesthesiologist and denied that he was either an orthopedic surgeon or a neurosurgeon. The ALJ concluded that Dr. Dang was a neurologist and that his medical opinion was, therefore, not entitled to controlling weight.

The Commissioner now presents the results of an internet search as evidence that Dr. Dang is, in fact, a neurologist. The relevant issue, however, was the record evidence that supported the ALJ's credibility decision, not post-hearing evidence that the ALJ never considered. Courts cannot supply reasons to support an ALJ's decision that an ALJ himself did not actually rely on. Indeed, courts cannot even rely on evidence that *is* in a record if the ALJ overlooked it. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("[W]e cannot uphold a decision by an administrative agency . . . if, while there is enough evidence in the record to

support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.").

Here, the ALJ had no basis on which to conclude that Dr. Dang was a neurologist and to discount his opinion on that basis. As the Court noted, this was not a mere technical error in the ALJ's decision. In reality, Dr. Dang had performed surgery on Mr. Valentine's back. The Court stated:

> Even if he was a neurologist, as the ALJ assumed, the record does not suggest that he lacked the expertise to give an opinion on Plaintiff's back pain, which involved issues related to nerve compressions and nerve roots. At a minimum, the ALJ was required to explain how a physician like Dr. Dang who diagnoses a patient with a bulging disc and performs surgery to remedy that problem is not qualified to give a medical opinion on the nature and severity of his patient's condition.

*Valentine*, 2011 WL 2518904, at *7. Far from being substantially justified, the ALJ's treatment of Dr. Dang was based on both a lack of record evidence supporting his conclusion and a complete lack of explanation of the reasoning that supported his decision on this issue. An ALJ is not required to address all the evidence presented to him, but "the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter,* 245 F.3d 881, 889 (7th Cir. 2001). This requires the ALJ to build an "accurate and logical bridge from the evidence to her conclusion." *Clifford,* 227 F.3d at 872. Here, the ALJ failed to do so altogether.

Finally, the Commissioner argues that the ALJ's discussion of the factors that guide what weight to assign to a treating physician were followed to such a degree that the ALJ's conclusion was substantially justified. Left unaddressed, however, is why the Commissioner's litigation position was justified in defending the ALJ's decision on this issue. In addition to the clear errors noted above, the ALJ failed to assign any specific weight to Dr. Dang's opinion. Social

Security Ruling 96-2p requires that an ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. As the Court stated, it was entirely unclear in this case whether the ALJ rejected Dr. Dang's opinion out of hand or whether he gave it some, but not controlling, weight. In defense of the ALJ's position, the Commissioner earlier argued that the Court could infer the weight assigned to the report. This position overlooked the well-established standard that an "ALJ's decision cannot leave the weight given to the treating physician's testimony to mere inference." *Ridigner v. Astrue*, 589 F. Supp.2d 995, 1006 (N.D. Ill. 2008). Accordingly, the Commissioner has not shown why his litigation position on this issue was substantially justified.

## IV. <u>**Fee Calculation**</u>

Mr. Valentine has submitted an itemized statement showing that 40.2 hours were spent by his attorneys in this matter, including the 3.5 hours allocated to filing a reply brief to the Commissioner's instant response. He also seeks fees for 2 hours spent by legal assistant and $31.53 in postage and copying fees. The Commissioner has not opposed these fees. For civil actions commenced after March 29, 1996, the EAJA's statutory rate for attorney's fees is $125.00 per hour. 28 U.S.C. § 1412(d)(2)(A). Plaintiff seeks an enhancement of that rate based on governmental CPI numbers in the amount of $175.00 per hour and seeks between $85.00 and $95.00 an hour for the legal assistant. *See* 28 U.S.C. § 1412(d)(2)(A)(ii). Again, the Commissioner does not oppose these figures.

The Court allows the $175.00 attorney fee and a $85.00 per hour charge for the legal assistant. The Court also allows Mr. Valentine's request for $14.40 in copying fees. It disallows, however, the $17.13 in postage fees. As the Court has previously stated, such fees will not be permitted in the absence of receipts that support a postage claim. *Smith v. Astrue*, No. 09 C 2011, 2011 WL 2746339, at *4 (N.D. Ill. July 14, 2011). Accordingly, the Court finds that Plaintiff is entitled to attorneys' fees in the amount of $7,035 (40.2 hours x $175), legal assistant fees in the amount of $170 (2 hours x $85) and costs of $14.40 for a total of $7,219.40.

## V. <u>Conclusion</u>

For the reasons stated above, the Court finds that the Commissioner's position in the underlying litigation was not substantially justified and that the fees and costs requested by Plaintiff are reasonable. Therefore, the Court grants Plaintiff's request for attorney's fees in the amount of $7,2190.40 to be paid to Plaintiff.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

**Dated:** October 31, 2011.